**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason E. Rappaport,<br><br>Plaintiff,<br><br>v.<br><br>Federal Savings Bank, et al.,<br><br>Defendants. | No. CV-18-01404-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendants' Motion to Stay, (Doc. 12), and Plaintiff's Motion to Strike, (Doc. 33). The Court grants both motions.

## BACKGROUND

Plaintiff Jason E. Rappaport brought suit against his former employer, Defendant The Federal Savings Bank ("TFSB"), and its CEO, Stephen M. Calk. (Doc. 1). Mr. Rappaport alleges that TFSB illegally terminated his employment after he developed leukemia, and that TFSB and Mr. Calk lied to Mr. Rappaport's clients about his dismissal. (Doc. 1). The first four counts of Mr. Rappaport's Complaint concern the defamation and intentional interference with a business relationship claims, and the last two counts concern the wrongful dismissal and retaliation claims. (Doc. 1).

Mr. Rappaport's employment contract with TFSB included an arbitration agreement. (Doc. 12, Exh. A ¶ 10). It states that any dispute "concerning the wages, hours, working conditions, terms, rights, responsibilities or obligations between them or arising out of their employment relationship . . . shall be resolved through binding

arbitration in accordance with the rules of JAMS Arbitration . . . ." (Doc. 12, Exh. A ¶ 10). Pursuant to this clause and the Federal Arbitration Act, Defendants have requested the Court to stay this case until arbitration is completed. (Doc. 12).

**DISCUSSION**

**I.     Legal Standard**

Under the Federal Arbitration Act ("FAA"), an arbitration provision in an employment contract "shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2; *see, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113–19 (2001) (holding that the FAA applies to employment contracts except those of transportation workers); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994), cert. dismissed, 515 U.S. 1187 (1995). "Although [a] contract provides that [state] law will govern the contract's construction, the scope of the arbitration clause is governed by federal law." *Tracer Research Corp*, 42 F.3d at 1294 (citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir. 1983)); *see Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (holding that FAA "not only placed arbitration agreements on equal footing with other contracts, but established . . . a federal common law of arbitrability which preempts state law"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("Federal substantive law governs the question of arbitrability.").

"Notwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Tracer Research Corp.*, 42 F.3d at 1294 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *see French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 908 (9th Cir. 1986). Where the arbitrability of a dispute is in question, a court must look to the terms of the contract. *See Chiron Corp.*, 207 F.3d at 1130. "Any doubts concerning the scope

of arbitrable issues should be resolved in favor of arbitration." *Simula*, 175 F.3d at 719 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)).

However, a court "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency." *Tracer Research Corp.*, 42 F.3d at 1294. "[T]he judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate . . . ." *United Steelworkers*, 363 U.S. at 582. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citations omitted); *see Simula*, 175 F.3d at 720 (stating that "the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms") (citation omitted).

**II. Analysis**

    **A. Conscionability of Arbitration Provision**

In evaluating whether the parties intended to arbitrate, courts apply ordinary state-law contract principles. *Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*, 497 Fed.Appx. 740, 741 (9th Cir. 2012) (applying New York law in arbitrability determination) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The arbitration agreement states that the terms were "made and entered into in the State of Illinois" and shall be governed by "the laws of the State of Illinois." (Doc. 12, Exh. A ¶ 10).

Illinois law favors arbitration and enforces valid arbitration agreements. *Williams v. Jo-Carroll Energy, Inc.*, 382 Ill. App. 3d 781, 784 (2d Dist. 2008) (citations omitted). An arbitration agreement is not enforceable if it is unconscionable. *Id.* "Unconscionability may be either procedural or substantive, or a combination of both." *Id.* (citation omitted).

        **1. Procedural Unconscionability**

Procedural unconscionability considers whether "a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was

agreeing to it." *Razor v. Hyundai Motor America,* 222 Ill.2d 75, 100 (2006). It also takes into account a lack of bargaining power. *Id.* The procedural unconscionability analysis considers "whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Phoenix Ins. Co. v. Rosen*, 242 Ill.2d 48, 60 (2011) (internal quotations removed) (citations omitted).

Illinois courts have not considered whether an arbitration agreement is unconscionable if it fails to attach all of the applicable rules of arbitration. By analogy, Mr. Rappaport refers to California precedent on the issue. In general, California courts consider what the weaker party in the agreement would expect in the unattached rules. One court found procedural unconscionability when the unattached rules contradicted elements in the employment contract and were different than the ones typically used in employment disputes. *Lou v. Ma Labs., Inc.* 2013 WL 2156316 at *3–*4 (N.D. Cal. 2013). Another California court found unconscionability when the unattached rules included prohibitive fees that a typical person would not expect in dispute resolution. *Parada v. Superior Court*, 176 Cal.App.4th 1554, 1571 (3d Div. 2009) (citing *Gutierrez v. Autowest, Inc.,* 114 Cal.App.4th 77, 90 (5th Div. 2003)); *see also Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406 (3d Div. 2003) (finding procedural unconscionability when unattached rules had elements that would surprise the weaker party). Simple failure to attach the arbitration rules does not conclusively show that the arbitration agreement is unconscionable. *See Coup v. Scottsdale Plaza Resort, LLC*, 623 F.Supp.2d 931, 953 (D. Ariz. 2011) ("Even California's pro-employee law in the arbitration arena has rejected . . . [the] argument that an employer's mere reference to unattached arbitration rules renders an arbitration agreement unconscionable *per se*.") (citing *Mathis v. Screen Actors Guild Producer Pension Health Plan*, 2011 WL 199002, *6 (Cal.App. 2 Dist. January 24, 2011)).

The arbitration agreement in Mr. Rappaport's employment contract explicitly states that disputes "shall be resolved through binding arbitration in accordance with the

rules of JAMS Arbitration applicable to employment claims . . . ." (Doc. 12 Exh. A ¶ 10). The clause is plainly set in the contract and is not otherwise hidden. Although the specific rules used in JAMS Arbitration of employment claims were not attached to the agreement, those rules are easily accessible. The applicable arbitration rules require a standard $1,500 filing fee, twelve percent case management fee, and other customary procedures to efficiently resolve the dispute. (Doc. 12 Exh. B). Illinois courts have upheld these JAMS rules. *See Tritsis v. BankFinancial Corp.*, 2017 WL 1134472 at *4 (N.D. Ill. Mar. 27, 2017); *Bahoor v. Varonis Systems, Inc.*, 152 F.Supp.3d 1091, 1100–1101 (N.D. Ill. 2015). The rules do not contradict the employment contract and conform to expected rules governing arbitration. Further, the claim allows for a party to opt out at the time of signing the agreement or within thirty days of its execution. (Doc. 12 Exh. A ¶ 10). Considering all of this, the arbitration agreement is not procedurally unconscionable.

### 2. Substantive Unconscionability

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Phoenix Ins. Co. v. Rosen*, 242 Ill.2d 48, 60 (2011) (internal quotations removed) (citations omitted). The substantive unconscionability analysis considers whether terms are "so one-sided as to oppress or unfairly surprise an innocent party, [presenting] an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 28 (2006) (quoting *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 89 (1995)).

The arbitration agreement is not "one-sided" and does not present an imbalance of obligations. It states that "parties will share equally in the cost of such Arbitration." (Doc. 12 Exh. A ¶ 10). If the underlying statute allows recovery of attorney's fees, then the arbitrator may reward fees in line with the statute. (Doc. 12 Exh. A ¶ 10). If the claim is minimal, TFSB may pay the employee's share of the arbitration fee. (Doc. 12

Exh. A ¶ 10). The terms of the agreement are not so one-sided as to oppress Mr. Rappaport or present an overall unbalance.

Mr. Rappaport also argues that the agreement may be substantively unconscionable due to his inability to pay for arbitration. (Doc. 22). A party seeking to invalidate an arbitration agreement as substantively unconscionable because it is prohibitively expensive has the burden to show the likelihood of incurring the prohibitive costs. *Bess v. DirecTV, Inc.*, 381 Ill.App.3d 229, 240–41 (5th Dist. 2008) (citing *Green Tree Financial Corp.—Alabama v. Randolph*, 531 U.S. 79, 92 (2000)). "An arbitration provision is not rendered inherently unconscionable because some of the arbitration costs will be imposed" on the plaintiff. *Id.* at 41. A plaintiff may fail to demonstrate that the cost of arbitration is prohibitively expensive when the "plaintiff has not demonstrated that the cost of an arbitration hearing will be greater than that of litigating the case in court." *Williams v. Jo-Carroll Energy, Inc.*, 382 Ill.App.3d 781, 788 (2d Dist. 2008).

Mr. Rappaport's attorney has stated that "the only cost for Mr. Rappaport to pursue his claims in this Court is the filing fee, which Mr. Rappaport has already incurred and was able to afford." (Doc. 22, Exh. B ¶ 25). Thus, Mr. Rappaport has showed that the cost of arbitration would exceed the cost of litigating the case in court.

Concerning Mr. Rappaport's ability to afford arbitration, the parties disagree about the expected cost of arbitration and Mr. Rapaport's ability to pay. Mr. Rappaport relies on his attorney's declaration that arbitration would cost between $40,000 and $75,000. (Doc. 22, Exh. B ¶ 24). TFSB anticipates that the true cost would be between $7,000 and $15,750. (Doc. 35 at 5). Mr. Rappaport claims that he cannot pay this cost because his annual living expenses of $312,000 are greater than his annual salary of $147,300. (Doc. 22, Exh. B ¶¶ 14, 21). Mr. Rappaport's report of annual expenses is exaggerated. He reports that he pays $2,000 per month to care for his children, which is separate from a $3,000 per month court order payment that provides for his children. (Doc. 22, Exh. A ¶¶ 6, 9). He estimates $3,500 per month in "medical and dental expenses, including insurance costs" which are also separate from $1,700 per month in miscellaneous

expenses that "include medical expenses and other household fees." (Doc. 22, Exh. A ¶¶ 8, 12). To find that the arbitration agreement is unconscionable based on Mr. Rappaport's monthly expenditure of $2,300 for personal food and clothing would mean that anyone could defeat an arbitration agreement if his or her lifestyle was expensive enough. The arbitration agreement is not substantively unconscionable.

### B. Arbitration of Counts One through Four

For agreements under the FAA, federal law governs questions of arbitrability unless parties clearly and unmistakably designate that nonfederal arbitrability law applies. *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (citations omitted). The Ninth Circuit has directed that a general choice-of-law provision is not clear and unmistakable evidence that the parties agreed to apply non-federal law to the question of arbitrability. *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 920–921 (9th Cir. 2011). Mr. Rappaport's employment contract has a general choice-of-law provision applying Illinois law to the terms of employment, but it does not clearly and unmistakably designate which law applies to the question of arbitrability. (Doc. 12 Exh. A ¶ 10). Therefore, federal arbitrability law determines the arbitrability of Counts One through Four.

As previously noted, a Court must first determine two gateway issues: (1) whether there is an arbitration agreement between the parties; and (2) whether the agreement covers the dispute. *Chiron Corp.*, 207 F.3d at 1130. "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* [so] provide." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). An agreement clearly and unmistakably delegates the question of arbitrability by expressly incorporating arbitration rules which provide that the arbitrator shall have power to rule on his or her own jurisdiction. *Brennan v. Opus Bank*, 796 F.3d

1125, 1130 (9th Cir. 2015) (holding that incorporation of AAA arbitration rules sufficiently designated question of arbitrability to arbitrator because the rules included a jurisdictional provision that arbitrator would decide arbitrability); *see also Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (observing that"[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability").

The arbitration clause of Mr. Rappaport's employment contract clearly and unmistakably states that such disputes "shall be resolved through binding arbitration in accordance with the rules of JAMS Arbitration applicable to employment claims." (Doc. 12 Exh. A ¶ 10). The JAMS rules, like the AAA rules, includes a provision that "[j]urisdictional and arbitrability disputes, including disputes over the . . . scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." (Doc. 12 Exh. B, Rule 11(b)). Accordingly, the parties agreed to delegate the question of arbitrability to the arbitrator.

Mr. Rappaport argues that the arbitration agreement does not apply to Counts One through Four because the misconduct surrounding the defamation and business interference claims occurred after TFSB terminated the employment contract with Mr. Rappaport. (Doc. 22). Yet, it appears that a primary question in these claims concerns Mr. Rappaport's conduct while employed at TFSB and the nature of his termination. (Doc. 1 ¶¶ 63–128). Thus, whether these claims relate to the "rights, responsibilities or obligations" between Mr. Rappaport and TFSB is a valid question. The Court finds that the employment contract delegates the question of arbitrability and the arbitrator will determine whether Counts One through Four are arbitrable.

### C. Arbitration of Claims against Mr. Calk

While the Federal Arbitration Act ("FAA") requires a court to dismiss or stay an arbitrable claim, the Ninth Circuit has not squarely addressed whether a district court

should order a stay for non-arbitrating parties. To avoid "piecemeal litigation," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), the Supreme Court has recognized that "[i]n some cases, . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n. 23 (1983). Whether a stay should be granted for non-arbitrating parties is a decision "left to the district court . . . as a matter of its discretion to control its docket." *Id.* (citing *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)).

Staying the proceedings may be appropriate "where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. Appx. 412, 415 (9th Cir.2002) (unpublished) (citations omitted). "[A]voiding a duplication of effort" is another ground that may justify granting a stay. *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985).

In Mr. Rappaport's Complaint, the arbitrable claims against TFSB predominate. In fact, Counts Two through Six do not even mention Mr. Calk, but instead claim that "TFSB acted with actual malice in portraying Mr. Rappaport in a false light" and "TFSB intentionally interfered with Mr. Rappaport's business relationships." (Doc. 1 ¶¶ 113, 122). Count One references Mr. Calk, but only as one TFSB employee of many who defamed Mr. Rappaport. (Doc. 1 ¶ 64). The Court finds that the arbitrable claims against TFSB predominate, and that a stay in the proceedings against Mr. Calk is appropriate.

### D. Waiver of Right to Arbitrate and Plaintiff's Motion to Strike

Mr. Rappaport argues that TFSB has not yet initiated arbitration and has therefore waived its right to arbitrate this dispute. Mr. Rappaport has not provided any legal authority for this position. The Fifth Circuit has persuasively described that requiring a defendant to initiate arbitration before the filing of the lawsuit will create a duty to institute proceedings which may establish his own liability. *General Guaranty Insurance*

*Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924, 928 (5th Cir. 1970). Further, the arbitration agreement does not include a provision concerning waiver or a timeframe to initiate arbitration. (Doc. 12 Exh. A ¶ 10). The Court finds that TFSB has not waived its contractual right to resolve any applicable dispute through binding arbitration.[1]

## CONCLUSION

As described above, the Court finds that the arbitration agreement is enforceable and grants the motion to stay.

**IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Stay (Doc. 12) is **GRANTED;**

2. Plaintiff's Motion to Strike (Doc. 33) is **GRANTED;**

3. The Parties shall file a Joint Status Report regarding the status of the arbitration on **October 29, 2018 and every ninety (90) days thereafter** until the stay is lifted.

Dated this 31st day of July, 2018.

_____
Honorable G. Murray Snow
United States District Judge

---

[1] To show that it has not been slow to initiate arbitration, TFSB referenced an email between Mr. Rappaport and his attorney. (Doc. 35 at 12; Doc. 35-1 Sub-Exhibit 6). Mr. Rappaport requests the Court to strike the email as privileged. (Doc. 33). Mr. Rappaport explains that he inadvertently sent the email to Mr. Rappaport's outdated TFSB account instead of sending it to Mr. Rappaport's personal account. (Doc. 33). The Court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. Rule 12(f). TFSB does not object to Plaintiff's motion. (Doc. 36). The Court grants the motion to strike.